BRAXTON *v.* STATE

[No. 21, September Term, 1957.]

---

*Decided October 22, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*James R. Compton,* with whom was *Leroy A. Cooper* on the brief, for the appellant.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City,* and *Thomas Nugent, Assistant State's Attorney,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Alvin Braxton was convicted by a jury of murder in the first degree for the shooting of a Baltimore City policeman, and sentenced to die by the administration of lethal gas. His appeal claims reversible error in the admission in evidence of the revolver used in the shooting, and its shells, and in the legal insufficiency of the evidence to sustain the verdict.

Braxton, a seventeen year old youth, with two of his friends, attempted an armed robbery of a liquor store in Baltimore. While fleeing the scene, he was shot in the leg by a policeman and disarmed. He was entrusted to the custody of police officers Phelan and Weintraub, who put him in an ambulance to be taken to nearby Lutheran Hospital. The officers rode in the ambulance with him. According to the State's version of what happened on the way to the hospital, Braxton was lying on the ambulance litter, moaning as if in pain (although he was actually "playing possum"), when he suddenly rose up, snatched Officer Phelan's gun and fired it three times. One shot wounded Officer Weintraub, and another went through Officer Phelan's chest, and caused his death soon after. Braxton's version of the shooting is that the two officers were hitting him to make him tell who his companions were, saying that they were going to kill him; Officer Weintraub dropped his gun on the floor of the ambulance and was trying to pick it up, but he, Braxton, "beat him to the gun", and when Officer Phelan subsequently charged into him, "the gun went off several times."

Braxton got out of the ambulance, dragging Officer Phelan with him to the street. He then jumped into the left front seat of a taxicab which had stopped behind the ambulance, pointed the gun at the driver, and told him to drive off. A struggle ensued between Braxton and the cab driver, during which Braxton dropped the gun, and he and the cab driver rolled into the street. Braxton fled but was later apprehended in another cab, holding a knife (which he had stolen by breaking into a nearby house) at the driver's side in an effort to consummate his escape. The driver of the first taxicab said that he didn't find the gun that had been dropped by Braxton until he parked his cab at the curb and noticed the gun between the flag of the meter and the dashboard. He told the police about it, and an officer took the gun. Sergeant Taylor testified that in the course of the investigation, his attention was directed to the Sun cab that had been behind the ambulance and specifically to a revolver lying between the meter and the dashboard. Under his direction and in his presence, the gun was picked up. It bore the serial number 266433. He checked the records of the police department and found that the gun had been issued to Officer Phelan for his official use. Sergeant Taylor marked his initials on the gun to identify it. He testified that the gun offered in evidence was the gun that was found in the cab the night of the shooting. He testified that the shells offered—five spent ones and one live one—were the same as or exactly like those taken from the gun.

There is no doubt that the gun and the cartridges were properly admitted in evidence. Officer Weintraub testified that the only guns in the ambulance were his and Officer Phelan's, that his never left his possession and was never fired in the ambulance, that he saw Braxton snatch Officer Phelan's gun and shoot it three times, and that no other gun was fired in the ambulance. Braxton does not claim that any other gun was fired in the ambulance.

The case on the facts is not unlike *Daniels v. State,* 213 Md. 90, 100, where Judge Manley for the Court cited and analyzed a number of cases on the subject and reiterated the rule that "evidence need not be positively connected with the

accused or the crime committed in order to render it admissible, and that if there is a probability of its connection with the accused or the crime, then it is admissible. A lack of positive identification affects the weight of the evidence rather than its admissibility." The facts in the case before us certainly justify the court's admission of the gun and the shells.

Appellant did not move for a directed verdict either at the close of the State's case or at the close of the entire case, and there were no objections or exceptions to the trial court's charge to the jury. When the record in a trial before the jury discloses no request for a directed verdict, there can be no review by this Court of the sufficiency of the evidence. *Briley v. State,* 212 Md. 445, 448, stated that the question as to sufficiency of evidence was not before us for the same reasons that it is not before us in this case, but because the appellant there had been sentenced to hang, we had examined the evidence and found that it met the requirements to sustain a conviction. We said: "In making this observation, the Court wishes it clearly understood this is not to establish a precedent, and those who, in the future, desire a review by this Court of the sufficiency of the evidence in a criminal case should aptly and properly reserve the question and have this reservation disclosed in the record."

The case before us was tried in November, 1956, and the warning in the *Briley* case was not issued until March 6, 1957. Although the warning there given should have been unnecessary, we have examined the record in the case before us and find the evidence fully sufficient under the law to sustain the verdict reached by the jury.

*Judgment affirmed, with costs.*